

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE HUNTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:00-CV-0933-P |
| | § | |
| DWAYNE BISHOP and | § | |
| DARVIN HILL, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court for consideration is Defendants' Dwayne Bishop and Darvin Hill's Motion for Summary Judgment, filed November 15, 2000. Plaintiff filed his Response to Defendants' Motion for Summary Judgment on December 15, 2000. Defendants filed a Reply on January 4, 2001. After a thorough review of the summary judgment evidence, the pleadings, the parties' briefs, and the applicable law, for the reasons set forth below, the Court is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED in part and DENIED in part.

## BACKGROUND

This case arose out of the circumstances surrounding plaintiff (Howard) Bruce Hunter's arrest on May 4, 1998. According to facts alleged by Plaintiff, on May 4, 1998 Congressman Pete Sessions and (then) Speaker of the House Newt Gingrich were scheduled to appear at a "media event" taking place at White Rock Lake Park in Dallas, TX in order to speak on environmental matters. Pl.'s First Am. Compl. at 2; Hunter Aff. at 2. Around mid-morning that day, Plaintiff, who

**Summary Judgment Order- Page 1**
3:00-CV-0933-P



was a member and officer of the Dallas Sierra Club, met with other Sierra Club officers at the home of Dr. John and Margie Haley, and all decided to attend the event. Hunter Aff. at 2. Some in the group elected to carry pasteboard signs with hand written messages on them. Plaintiff carried a cardboard sign in his hands that covered his entire chest area and which read "Pete Sessions- Don't use the environment to look Green." Pl.'s First Am. Compl. at 4.

Defendants Dwayne Bishop and Darvin Hill are veteran Officers with the Dallas Police Department who on May 4, 1998 were working in plain clothes, assigned to provide security for Speaker Gingrich and Congressman Sessions at this speaking engagement. *See* Bishop Aff. at 1. Plaintiff alleges that Defendants, somehow aware of a desire by Sessions and/or Gingrich to keep persons with adverse signs away from them, and acting under the pretext of security, agreed to keep any persons (such as himself) carrying any adverse signs, out of the view of any photo opportunity with the politicians. Pl.'s First Am. Compl. at 3. In addition, Plaintiff alleges that because he was carrying this sign, and on that basis alone, Defendants Bishop and Hill falsely concluded that he posed a physical threat to either Sessions or Gingrich, and caused his detainment and arrest without just cause or legal justification. Id. at 4-6.

The parties are in disagreement as to virtually every aspect of their interactions. According to Plaintiff, a podium had been erected and a rope barrier was constructed to separate the public from the speakers' podium. Id. at 4. Plaintiff then positioned himself on the opposite side of the rope barrier, approximately fifteen to twenty feet from the podium. Id. at 5. Detective Bishop, positioning himself next to Plaintiff, informed Plaintiff that he was a Dallas police officer and that he did not

want Plaintiff located where he was. Id.¹ Plaintiff alleges he told Bishop he intended to be near the front of the gathering because he wanted to hear Sessions' and Gingrich's statements. Id.

According to Mr. Hunter, Bishop again told him to maintain some distance from the speakers, although no similar statements were made to individuals who did not carry or display signs. Id. at 6. Bishop then positioned himself in front of Hunter in order to obstruct the view of Plaintiff's sign for those using the speakers' podium. Id; *see also* Hunter Aff. at 6.

After the event concluded, Plaintiff claims he started making his way toward the park's exit when at that point Bishop, who has walking alongside him, suddenly and forcibly grabbed Plaintiff's left wrist and demanded identification. Pl.'s First Am. Compl. at 6. Plaintiff claims that while still holding his sign, he calmly asked that Bishop let go of his hand so that he could reach for his wallet in his back pocket, a request he says Bishop refused. Hunter Aff. at 7. At this point, allegedly out of fear that "other police officers might join in and [he] might be clubbed to the ground at any moment or even shot," he decided to "attract the attention of others." Id. at 7-8. This he did by "urging [Bishop] in a raised voice to let go of [him]" and by raising his right hand, and "very slowly lower[ing] it in a prolonged arc motion until it barely touched [Bishop's] clenched hand . . . by no stretch of imagination a 'blow' . . . [since] had a mosquito fallen asleep on Det. Bishop's clenched

---

¹The is some additional discrepancies between the parties as to the facts here since Plaintiff, in his affidavit, alleges that "at [no] point did Det. Bishop or anyone else tell me, ask me or suggest to me that there was some designated area of the Park I should go to or be confined to during this event," Hunter Aff. at 5-6. Meanwhile, Defendant Bishop asserts that when he arrived at the Park "the sergeant came over and said there were some protestors . . . in the park, and they had told them a place that they could- an area where they could protest, and - but there was one guy [presumably Plaintiff] there that was- that was going against- more or less thought he could - he should not be in a certain area, he shouldn't have to stand in that certain area." Bishop Dep. at 15.

**Summary Judgment Order- Page 3**
3:00-CV-0933-P

hand beneath [his] slowly descending hand, this insect might have been shaken up but certainly not killed or injured by [these] carefully controlled, highly theatrical gestures." Id. at 8. Plaintiff denies that he committed any offense, including any assault on Bishop. Pl.'s First Am. Compl. at 6. Instead, Hunter claims that Bishop pushed him, jabbed him in the chest, and forcibly handcuffed him, before placing him under arrest. Id. at 8-9.

Plaintiff further alleges that following his arrest, he was incarcerated for five and one-half hours, and subsequently had to appear in Dallas Municipal Court on two separate occasions to answer to the charge of "assault." Pl.'s First Am. Compl. at 9; Hunter Aff. at 11.[2] Plaintiff claims that the charges were dismissed at his first appearance, but Defendants Bishop and Hill re-filed the charges, only to have them once again be dismissed after Defendants failed to show in Court. *See* Hunter Aff. at 12. Plaintiff insists this re-filing can only be explained by Defendants motive in trying to cover up their illegal actions in arresting him for his insistence on the right to peaceably attend a public event and right to carry a protest sign. Id.

Defendants Bishop and Hill, on their behalf, claim they never participated in any agreement to prevent or obstruct any individuals with views different from those of Mr. Gingrich, from expressing their views or holding protest signs. Bishop Aff. at 2; Hill Aff. at 2. In fact, Bishop asserts that when he arrived at White Rick Lake Park, prior to the speeches, he approached Plaintiff and several women who were holding signs and standing together some fifteen to twenty feet away from the speaker's podium, and asked them not to move any closer to the podium during the

---

[2] Plaintiff's Complaint and Affidavit are not in accord as to the dates of his appearances in Dallas Municipal Court, although he claims that both prosecutions "ended in his favor" because the charges were ultimately dismissed. Pl.'s First Am. Compl. at 9.

**Summary Judgment Order- Page 4**
3:00-CV-0933-P

speeches for reasons of security and in order to prevent any disruption of the speeches. Bishop Aff. at 1.

During Gingrich's speech, however, Bishop asserts that Plaintiff began moving closer, prompting him to go over and instruct Plaintiff not to do so. Id. at 2. Bishop here also refutes Hunter's contention that Plaintiff ever articulated an inability to hear or see the speech as his reason for moving closer. Id. Because Plaintiff insisted on moving closer, and because he was responsible for security at the event, Bishop claims to have perceived Plaintiff's actions as a possible threat to the safety of Mr. Gingrich. Id. Thereafter, seeing Plaintiff again move closer toward Mr. Gingrich, Bishop decided to ask Plaintiff for his identification, a request he claims Plaintiff refused. Id.[3] At that point Detective Bishop claims he grabbed Plaintiff's arm in order to stop him from moving any closer, and immediately afterwards Plaintiff struck him on his arm several times as he yelled to let go of him. Id. Bishop then placed Hunter under arrest for assault, handcuffed him, and led him away with the assistance of uniformed Dallas Police Officers present at the scene. Id.

Meanwhile, Detective Hill claims he was moving with Mr. Gingrich toward the van in which they would leave the park when this incident occurred and he himself did not participate in Plaintiff's arrest. Hill Aff. at 1-2. However, Hill claims that he did witness Plaintiff's striking of Detective Bishop on the arm several times and afterwards prepared an offense report in relation to this incident. Id. at 2.

---

[3]It should be noted here that Defendant Bishop's testimony conflicts as to exactly when and where he decided to approach and later arrest Plaintiff, and as to where Speaker Gingrich was located at the time these actions took place. *See* Bishop Dep. at 57-58, 77 (Arrest made while Speaker Gingrich was still making his speech); *but see* App. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. 2 (Arrest made *after* the speech had concluded, according to Dallas Police Department Arrest Report signed by Detective Bishop).

Finally, Defendants defend as the reason for not appearing for Plaintiff's court dates the fact that they were never notified by subpoena. *See* Bishop Dep. at 68-69.

## DISCUSSION

### I. The Parties Claims

Plaintiff Hunter in this action asserts a right to recovery and declaratory judgment against Dallas Police Officers Dwayne Bishop and Darvin Hill based on their violation of 42 U.S.C. § 1983. More specifically, Plaintiff alleges that Defendants unlawfully detained him, arrested him for assault without probable cause, used excessive force during the arrest, maliciously prosecuted him, and otherwise violated his First and Fourth Amendment rights under the United States Constitution. Pl.'s First Am. Compl. at 8-9. In addition, Plaintiff alleges causes of action for assault, battery, false arrest and false imprisonment under Texas state law. Id. at 10. Defendants have moved this Court for relief claiming that summary judgment is proper because (1) probable cause or reasonable suspicion existed for Plaintiff's detention; (2) probable cause existed for Plaintiff's arrest; (3) the force used against Plaintiff did not rise to the level of a constitutional violation; (4) Defendants' did not maliciously prosecute Plaintiff; (5) Defendants did not violate Plaintiff's First Amendment rights; (6) Defendants are shielded from liability by the doctrine of qualified immunity with respect to Plaintiff's federal claims; (7) Defendants are not liable on Plaintiff's state law claims; and (8) Plaintiff is not entitled to a declaratory judgment as to his First Amendment rights. Def.'s Mot. Summ. J. at 2. Each of these arguments will be considered in turn.

### II. Standard for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine

**Summary Judgment Order- Page 6**
**3:00-CV-0933-P**

issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate in *any* case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323. Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere existence of some factual dispute will not defeat a motion for summary judgment. *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment. *Id.* Moreover, a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The Court will not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Little*, 37 F.3d at 1075. Therefore, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**Summary Judgment Order- Page 7**
3:00-CV-0933-P

### III.  Qualified Immunity

"Qualified" or "good faith" immunity shields government officials performing discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This shield of qualified immunity is generally available to government officials, such as Officers Bishop and Hill here, sued under 42 U.S.C. § 1983. *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

In *Seigert v. Gilley*, 500 U.S. 226 (1991), the United States Supreme Court set forth the analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity. As a threshold matter, the Court must first determine whether the plaintiff has alleged a violation of a clearly established constitutional right. *Seigert*, 500 U.S. at 231-232. If the plaintiff is successful, the Court must then determine whether the defendants conduct was objectively reasonable in light of the "clearly established" law at the time of the alleged violation. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993); *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

"Objective reasonableness" is a matter of law for the court to decide. *Goodson*, 202 F.3d at 736. The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law. *Id*. Therefore, "even law enforcement officials who 'reasonably but mistakenly commit a constitutional violation' are entitled to immunity." *Id*.; *see also Anderson*, 483 U.S. at 641.

### a. Claims of False Detention and Wrongful Arrest

Individuals have a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty, and violation of this right can be grounds for a suit under § 1983. *See Dennis v. Warren*, 779 F.2d 245, 247 (5th Cir. 1985). The Fourth Amendment, of course, applies to all seizures of the person, including seizures that involve only a brief stop short of traditional arrest. *See Terry v. Ohio*, 392 U.S. 1, 16-19 (1968). The constitutional standard for justifying such a particular intrusion demands that a police officer must be able to point to "specific and articulable facts" which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Id.* at 21.

Similarly, the Fourth Amendment requires that an arrest be supported by either a properly issued arrest warrant or probable cause. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of an arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller v. City of Texas City Police Dept.*, 130 F.3d 162, 165 (5th Cir. 1997). Under Texas law, a police officer may arrest an offender, without a warrant, for any offense committed in his presence or within his view. *See* Tex. Crim. Pro. Code Ann. Art. 14.01 (Vernon 2001). A person commits the offense of assault if the person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code § 22.01 (3) (Vernon 2001).

In this case, Plaintiff alleges that Officers Bishop and Hill unlawfully detained and arrested him on May 4, 1998, without any legal cause or justification in violation of his Fourth Amendment rights. *See* Pl.'s First Am. Compl. at 6-8. Since an illegal seizure as well as a wrongful arrest

constitute violations of clearly established constitutional rights, Plaintiff's allegations satisfy the first prong of the qualified immunity analysis for each of these claims.

If the plaintiff asserts a violation of constitutional rights, the second step of this analysis requires the Court to determine whether the officials conduct was *objectively* reasonable under the clearly established law as it existed at the time of the incident. *See Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001). The Fifth Circuit's precedents are clear in pointing out that the question of "objective reasonableness" is a matter of law for the district courts to decide. S*ee Goodson*, 202 F.3d at 736; *see also Lambkin v. City of Nacogdoches*, 7 F.3d 430, (5th Cir. 1993). However, a summary judgment denial of qualified immunity is still appropriate if there are "underlying historical facts in dispute that are material to the resolution of the question of whether the defendants acted in an objectively reasonable manner." *Mangieri v. Clifton*, 29 F.3d 1013, 1016 (5th Cir.1994). In this case, since so many discrepancies exist between the parties accounts of Plaintiff's actions leading up to and including his detainment and arrest, the Court finds that as a matter of law, a genuine dispute of material fact exists as to whether reasonable suspicion for the stop or probable cause for this arrest existed at the time. Such differing versions of these events "leave the Court without a coherent view of what actually happened in the first place." *Id.* Therefore, the Court cannot draw such the necessary conclusions of law from these disputed facts at the present summary judgment phase. *See Goodson*, 202 F.3d at 739. Thus, the Court denies Defendant Bishop's request for qualified immunity as to these claims.[4]

---

[4]Defendants also allege that Bishop had additional justification to detain Plaintiff based his violation on § 38.15 of the Texas Penal Code. *See* Br. Def.'s Mot. Summ. J. at 4. This section provides, in pertinent part:
> (a) A person commits [the] offense [of Interference with Public Duties] if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:
>> (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law.

Tex. Penal Code Ann. § 38.15 (Vernon 2001).

[Continued next page]

Summary Judgment Order- Page 10
3:00-CV-0933-P

As for Detective Hill, nowhere does the summary judgment record indicate that Hill ever instructed or assisted Bishop in the detainment or arrest of Plaintiff in any manner. Additionally, Hill's affidavit indicates that he was moving with Mr. Gingrich toward the van in which they would all leave the park when this incident occurred, and there is no evidence here suggesting he participated in either Plaintiff's detention or arrest besides in writing a report. Hill Aff. at 1-2. Thus, Hunter fails to allege sufficient involvement by Defendant Hill to lay a foundation for recovery under § 1983 for these constitutional infringements, and qualified immunity will be granted to him as to these claims. *See Johnston v. City of Houston*, 14 F.3d 1056, 1060-1061 (5th Cir. 1994) (dismissing claims by plaintiff demonstrator who asserted claims of illegal detention and false arrest against police officer who did not participate in the plaintiff's detention or arrest).

### b. Claims of Excessive Force

The Fourth Amendment also governs claims of excessive force used during an arrest. *See Graham v. Conner*, 490 U.S. 386, 394 (1989). In order to state a claim for excessive force in violation of the constitution, a plaintiff must allege "(1) an injury,[5] which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was

---

The Fifth Circuit has held that a court may find a police officer is entitled to qualified immunity whenever a reasonable officer in his position could have found plaintiff's conduct warranted belief he committed the offense with which he was charged or a related offense, even if the second offense was not charged. *See Gasser v. City of Garland, Texas*, 864 F.2d 394, 399-400 (5th Cir. 1989). However, as noted above, Plaintiff here denies ever receiving or disobeying any order with regards to staying away from the speakers or interfering with Defendant's protection duty. *See* Pl.'s First Am. Compl. at 6. Therefore, a genuine and material dispute exists as to these facts, therefore also requiring denial of summary judgment on this point.

[5]At one time the Fifth Circuit required a plaintiff to establish a "serious injury" in order to prevail in an excessive use of force action. *See Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989) (en banc). However such proof is no longer necessary since the Supreme Court invalidated that requirement in *Hudson v. McMillan*, 503 U.S. 1, 4 (1992). Today, the proper amount of injury required to prevail in such an action depends on the context in which the injury occurs. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

(3) objectively unreasonable." *Spann*, 987 F.2d at 1115. The amount of injury necessary to satisfy the Fifth Circuit's requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Ikerd v. Blair*, 101 F.3d 430, 434-435 (5th Cir. 1996). Therefore, the injury must be more than a de minimis injury, evaluated in the context in which the force was deployed. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Hunter here alleges that he was assaulted by Officer Bishop when his left wrist was grabbed without legal justification, and that Bishop grabbed his left upper arm and forcibly pushed up on it in a rude and provocative manner as he was being arrested. *See* Pl.'s First Am. Compl. at 6; *see also* Hunter Aff. at 8. According to Hunter, Bishop also jabbed him in the chest with the extended forefinger of his right hand, and forcibly handcuffed him before taking him downtown to County Jail. Id. at 9. Bishop strenuously denies these allegations, and asserts that he only used force that was reasonably necessary in order to prevent Plaintiff from continuing to approach Mr. Gingrich, and to place Plaintiff under arrest for assault. Bishop Aff. at 2. In *Glenn v. City of Tyler*, 242 F.3d at 314, the Fifth Circuit held that plaintiff's contentions that a police officer put her handcuffs on too tightly causing her right wrist to swell, without more, did not amount to sufficient injury for a claim of excessive force. However, unlike the plaintiff in *Glenn*, Hunter here claims that Detective Bishop did in fact improperly touch his person outside of when he was handcuffed, including being grabbed by the arm when he was first detained. Moreover, Hunter alleges that these actions amounted to malicious, willful, wanton, and reckless acts, evidencing a total disregard for Plaintiff's constitutional rights. *See* Pl.'s First Am. Compl. at 10. Therefore, at this summary judgment juncture, the Court must deny qualified immunity protection as to Defendant Bishop on these claims.

However, Plaintiff once again has failed to allege sufficient involvement by Defendant Hill to lay a similar foundation for recovery under § 1983 here, and thus qualified immunity will be granted to Hill on the claim of excessive force. *See Johnston v. City of Houston*, 14 F.3d at 1060-1061.

### c. Claims of Malicious Prosecution

The constitutional right to be free from a bad faith or malicious prosecution is sufficient to support a damage judgment against state law enforcement officials under § 1983. *Goodson*, 202 F.3d at 740. The elements necessary in order to establish a claim for malicious prosecution are that:

> (1) the state commences a criminal prosecution against the plaintiff;
> (2) the defendants caused or aided in the prosecution;
> (3) the prosecution terminated in the plaintiff's favor;
> (4) the plaintiff was innocent;
> (5) the defendants acted without probable cause;
> (6) the defendants acted with malice; and
> (7) the criminal proceeding damaged the plaintiff.

*See Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). For purposes of this claim, probable cause means "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Id*.

Hunter here alleges in his complaint that following his arrest, he was incarcerated for five and one-half hours, and subsequently had to appear in Dallas Municipal Court on two separate occasions to answer to the charge of "assault" brought by the Defendants. Pl.'s First Am. Compl. at 9; Hunter Aff. at 11. In addition, he also claims these charges were dismissed twice after Defendants failed to show up to Court. *See* Hunter Aff. at 12; *see also* Footnote 2 *supra*. Defendants, however, defend as the reason for not appearing for Plaintiff's court dates the fact that they were never notified by subpoena. *See* Bishop Dep. at 68-69. Nevertheless, the Court notes here

that to the extent that the facts undergirding the probable cause determination continue to be disputed, this precludes resolving the issue as a matter of law at to Detective Bishop. *See Kerr*, 171 F.3d at 340. However, the Court notes that the only allegation in the record against Detective Hill is that he witnessed the purported assault by Plaintiff against Bishop and filed a report to that effect. Hill Aff. at 1-2. As there is no other evidence involving Hill's participation or aid in the prosecution of Hunter except for the filing of this report, the Court grants summary judgment qualified immunity to him as to this claim. *See Goodson*, 202 F.3d at 741.

### d. Claims of Violation of First Amendment

The right of an American citizen to criticize public officials and policies and to advocate peacefully is the central meaning of the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). Thus, by arguing that he was denied photo opportunities because he carried a sign indicating disagreement with Congressman Sessions and/or Speaker Gingrich, *see* Pl.'s First Am. Compl. at 3, as well as alleging he was detained and arrested by Defendants for exercising his freedom of speech rights, Id. at 8, Hunter has stated a claim for a constitutional violation based on First Amendment grounds. *See Johnston*, 14 F.3d at 1061.

With regards to Detective Hill, as previously stated throughout this opinion, the Court does not find any support in the record in finding that Hill ever instructed or assisted Bishop in the detainment or arrest of Hunter on May 4, 1998. Thus, Hunter fails to allege sufficient involvement by Defendant Hill to lay a foundation for recovery under § 1983 for his constitutional infringements, and therefore qualified immunity will be granted to him as to Plaintiff's claims of First Amendment violation. However, since a genuine dispute as to the material and operative facts of this case exist with relation to Plaintiff's claims against Detective Bishop, seen by the differing accounts of these

events as provided by the parties summary judgment evidence, the Court must deny qualified immunity for Defendant Bishop as to Plaintiff's First Amendment claims. Summary judgment is inappropriate under these circumstances, unless the plaintiff's version of the violation does not implicate clearly established law. *See Id.*[6]

### III. Texas Official Immunity

In addition to his federal claims, Hunter in his suit alleges causes of action against Defendants for assault, battery, false arrest and false imprisonment under Texas state law. Pl.'s First Am. Compl. at 10. Under Texas law, police officers are entitled to official immunity from such state law claims if the suit arises: (1) from the performance of their discretionary duties; (2) performed in good faith; (3) while acting within the scope of their authority. *See Jones v. City of Grand Prairie*, No. Civ. 3:97-CV-1907-H, 1999 WL 21047 at *8 (N.D. Tex. Jan. 6, 1999) (Sanders, S.J.) (*citing Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). If an action involves personal deliberation, decision and judgment, it is considered for purposes of the officer's state law official immunity, as a discretionary act. *See Id.* An officer acts in good faith in pursuit of a case if a reasonably prudent officer, under the same or similar circumstances, could have believed that his actions were lawful. *Id.* And finally, an official acts within the scope of his authority if he is discharging the duties generally assigned to him. *Id.*

Because this Court has already held that a genuine issue of material fact exists as to whether Hunter was lawfully detained and arrested based on the disputed evidence before the Court, Defendant Bishop's motion for summary judgment must be denied. The Court cannot decide, as a

---

[6]The Court does not reach at this time Hunter's demand for a declaratory judgment "defining the rights of the plaintiff to peacefully protest and carry a protest sign without police interference." *See* Pl.'s First Am. Compl. at 10-11.

matter of law, whether Bishop performed his duties "in good faith." However, to the extent that Plaintiff alleges any claims of assault, battery, false arrest and false imprisonment against Defendant Hill, for the reasons stated above, official immunity will be granted to him because of his noninvolvement in either Hunter's detention or arrest in this case.

## CONCLUSION

Accordingly, upon careful review of the parties' arguments and the relevant law, for the reasons stated previously, the Court concludes that Defendants Motion for Summary Judgment based on Plaintiff's federal claims of false detention, wrongful arrest, excessive force, malicious prosecution and violation of First Amendment, as well as Plaintiff's state law claims for assault, battery, false arrest and false imprisonment against Defendant Darvin Hill, shall be and are hereby GRANTED. Furthermore, the Court concludes Defendants Motion for Summary Judgment based on Plaintiff's federal law claims of false detention, wrongful arrest, malicious prosecution, excessive force and violation of First Amendment, as well as Plaintiff's state law claims of assault, battery, false arrest and false imprisonment against Defendant Dwayne Bishop, shall be and are hereby DENIED.

**So Ordered**.

Signed this 28th day of September, 2001.

JORGE A. SOLIS

UNITED STATES DISTRICT JUDGE